IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEAN GERMAIN | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-12-1882 |
| MONICA METHENY, *et al.* | * | |
| Defendants | * | |
| | *** | |

# MEMORANDUM

Pending is defendants' motions to dismiss or for summary judgment.[1] ECF No. 15 and 29. Plaintiff opposes the motions. ECF Nos. 18, 27, 28 and 31. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). Also pending are plaintiff's motions for appointment of counsel[2] (ECF No. 32) and to compel discovery[3] (ECF No. 41). For reasons apparent herein, plaintiff's motions shall be denied.

## Background

Self-represented plaintiff Jean Germain ("Germain"), an inmate at North Branch Correctional Institution (NBCI), alleges he was handcuffed behind his back on April 26, 2012, in violation of a medical order issued on April 24, 2012, by Dr. Collin Ottey for front-cuffing only. ECF No. 1 at Ex. 1. The action of cuffing Germain behind his back aggravated the shoulder injury for which the front cuffing was ordered and the pain from the old injury returned the following day, April 27, 2012. ECF No. 1 at pp. 2 - 3.

---

[1] Counsel for Monica Metheny and Corizon, Inc., Michelle J. Marzullo and Benjamin L. Davis, III, move to withdraw their appearance in this case. ECF No. 13. The motion shall be granted.

[2] The court observes that plaintiff has demonstrated the wherewithal to respond to motions and present his claims to the court in a clear, concise manner and that no extraordinary circumstances exist in this case, making appointment of counsel unnecessary under 28 U.S.C. §11915(e)(1).

[3] Discovery is inappropriate in this case as a scheduling order requiring the parties to engage in discovery was never issued. *See* Local Rule 803.1 (D. Md. 2011).

Germain states he was scheduled for nurse sick call on April 30, 2012, but was denied care. He claims that he learned later when he reviewed his medical record that "RN Monica" and an unnamed correctional officer signed a release of responsibility form stating that he had refused sick call. ECF No. 1 at Ex. 2. Germain filed an administrative remedy procedure complaint (ARP) on May 17, 2012, concerning the release of responsibility form. *Id.* at Ex. 3. In response to the ARP Germain was interviewed by Mr. Beeman, nurse manager, on May 23, 2012. During his conversation with Beeman, Germain states he learned he was scheduled to see Dr. Ottey on May 19, 2012, for follow up treatment, but was not seen because an unnamed correctional officer stated that he had refused to report for the appointment. Germain informed Beeman that he had not refused to see the doctor and that he still required follow-up treatment. Beeman promised Germain that he would put in a referral for him to be seen by Dr. Ottey. ECF No. 1 at pp. 3 – 4.

On June 6, 2012, Germain informed Beeman that he had not yet been seen by Dr. Ottey. In response Beeman again promised Germain would be referred for treatment. Despite putting in requests to be seen, Germain claims he has not been given treatment. He continues to experience joint pains and the refusal to provide him treatment have increased his anxiety causing him to suffer from a migraine headache. Germain states that he also was not treated for the migraine. ECF No. 1 at p. 4.

In an amended complaint, Germain alleges that a registered nurse named Dawn Hawk falsified a report on May 19, 2012, stating that he had refused treatment. ECF No. 12 at pp. 1. - 2. He further states that as a result of the falsified report, he was not able to be seen for treatment until July 24, 2012.

Defendant Monica Metheny, R.N. ("Metheny"), states in an affidavit that on April 19, 2012, Germain reported to the medical unit with cold symptoms and also complained that his knees, neck, arm and shoulder hurt because of a use of force incident involving custody staff. When he was examined, Germain exhibited a normal gait and had no signs of swelling, redness or markings on his shoulder, elbow or knees. He was referred to a medical provider and instructed to return sooner if his symptoms did not subside. ECF No. 15 at Ex. A.

Germain was seen again on April 24, 2012, for complaints of right shoulder and knee pain. At that time he did not report numbness, tingling or locking of his knees, but was experiencing tenderness in his right shoulder and moderate pain in the knees. Although Germain was observed to have a decrease range of motion in his right shoulder, there was no swelling in his joints. He was prescribed Acetaminphen for pain and issued an order for front cuffing to accommodate the shoulder pain. Additionally, a follow up was scheduled for two weeks later. An x-ray of Germain's shoulder revealed no fracture, dislocation, subluxation or other abnormality. *Id*.

On April 30, Metheny states she was scheduled to see Germain for a sick call request indicating that the pain medication prescribed was not working. She states he refused to attend nurse sick call on that date. Metheny explains that sick call requests are made by filling out a form and dropping it in the sick call box. If an inmate is on segregation status he is permitted to hand his sick call request to the tier officer who drops the request into the box for the inmate. Request slips are collected daily from the sick call box, entered into the computer, and appointments are scheduled. If any inmate refuses to attend a scheduled sick call appointment he is asked to sign a release of responsibility form (ROR); if he refuses to sign the ROR, the nurse

and correctional officer notes his refusal. Metheny states she did not refuse to see or otherwise deny Germain medical care on April 30, 2012; rather, he declined the appointment. *Id*.

Germain was seen two days later on May 2, 2012, where a gastrointestinal issue was addressed and a potential Barium study discussed. At the appointment Germain did not complain about shoulder or knee pain. Germain was scheduled to be seen by a physician on May 19, 2012, but declined the appointment again. Defendant Dawn Hawk, R.N., states in her affidavit that she did not, as Germain alleges, falsify a medical release of responsibility stating that he refused an appointment on May 19, 2012. Additionally, she states that she does not recall being involved in any way with Germain's appointment for May 19, 2012. ECF No. 29 at Ex. A. He was seen by a nurse three days later on May 22, 2012, but did not complain about issues regarding pain medication or continued pain in his knees or shoulder. ECF No. 15 at Ex. A.

On June 27, 2012, Germain was seen for his complaint of right shoulder pain. He reported his shoulder gave him pain intermittently a few days per week which was not addressed by the pain medication he had been provided. No deformity was noted in Germain's right shoulder and he exhibited full strength and range of motion. Germain was given instruction on daily range of motion exercises as well as stretching; he was told to follow up the condition worsened or did not improve within 15 days. The pain medication was changed to Naproxen. *Id*.

Approximately one month later, on July 24, 2012, Germain reported to the medical unit for a follow-up appointment for his shoulder pain. He reported experiencing stiffness and increased pain when handcuffed, but did not report numbness or tingling. Germain told medical staff he has been performing the shoulder exercises he was provided. The examination established continued tenderness as well as moderate pain with movement, but no swelling was

noted. Germain was again issued an order for front-cuffing, bottom bunk status, and prescribed Naproxen for pain.  He was also instructed to refrain from weight lifting, heavy lifting, or push-ups.  If his condition worsened or did not improve in 30 days, Germain was told to follow up with medical staff.  *Id*.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference

'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

  In his response in opposition, Germain states that his claim against Corizon should not be dismissed because he has alleged that Corizon is aware of "many complaints" regarding Metheny and other medical personnel who deny prisoners care or treatment in an attempt to protect correctional staff from liability. ECF No. 18 at p. 5.  This claim is based on Germain's assertion that many of the nurses employed by Corizon at NBCI are married to correctional officers and have a conflict of interest in performing their job duties as medical staff. ECF No. 1.  Defendants state that the mere fact that some nurses may be married to correctional officers, without more, does not establish that constitutionally adequate medical care was withheld and that regardless, Germain received proper medical care. ECF No. 15.  Germain invites this court to infer from the circumstantial evidence he presents that since Dr. Ottey did not sign the ROR for May 19, 2012, correctional officers prevailed upon Dawn Hawk to sign it because they knew she would sign it "with no questions ask[ed]." ECF No. 18 at p. 6.  He further attempts to refute Hawk's statement that she did not falsify a medical record as he alleges and does not recall being involved with the May 19, 2012 appointment by attaching as an exhibit to his response in opposition a copy of the ROR bearing Hawk's signature. ECF No. 31 at p. 7.

Assuming an ROR was improperly signed on Germain's behalf on the two occasions he alleges, those incidents do not establish a constitutional violation with regard to his medical care.[4] Germain was seen shortly after the date he was alleged to have refused an appointment and his condition was treated. Germain's shoulder pain was examined on several occasions and no abnormality was detected. An x-ray did not reveal an injury. Nevertheless medical staff provided him with progressively stronger pain medications, exercises, and accommodations for the painful shoulder. To the extent the conspiracy to deprive inmates of medical care exists, it did not, in this case, result in deliberate indifference to a serious medical need. Defendants are entitled to summary judgment in their favor. Germain's motions to appoint counsel and to compel discovery shall be denied in light of the dispositive nature of this opinion.

A separate order follows.

__January 4, 2013_____  
Date

_____/s/_____  
J. Frederick Motz  
United States District Judge

---

[4] Thus, the "dispute" concerning Hawk's signature on the ROR is immaterial to the dispositive issue in this case.